IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

THOMAS BROTHERTON                                                PLAINTIFF

v.                         No. 4:12-cv-534-DPM

JAY HILL, Individually and in His
Official Capacity; and DAVID
DONHAM, Individually and in His
Official Capacity                                                DEFENDANTS

ORDER

1.  Brotherton worked as a boiler operator at the Arkansas Health Center, a nursing facility of the Arkansas Department of Human Services. The parties agree his job was a dangerous one. Brotherton maintained boilers that held hot water ranging from 110 degrees to 1,400 degrees. If improperly maintained, boilers can explode, causing great harm to people and property. Human error is the culprit in most explosions. Boiler operators such as Brotherton are, under the Center's policy, subject to random drug testing and, like all Center employees, subject to drug testing based on reasonable suspicion.

In November 2011, maintenance supervisor Tracy Jackson found a cigarette lighter next to an aluminum pie pan in the men's restroom used by Brotherton and other maintenance personnel. Burnt brown residue was in the

pan. Jackson informed safety officer Donham, a former narcotics officer with many years' experience in law enforcement. Donham suspected drug use and he called director Jay Hill. Donham then had Brotherton, and all the other maintenance folks on the job, gather in a conference room. From there, safety officers carted van-loads of workers across campus to the drug-testing facility. Nobody was watching Brotherton fill the testing cup. He did, however, have to leave the door open and facility personnel were in the next room.

The Center's policy on point is appended. The Center prohibits employees from using controlled substances on duty. When the circumstances provide reasonable cause, the Center may require its employees to submit to urinalysis. An employee with a positive test result faces suspension, drug counseling, termination, or some combination of this discipline. The policy requires confidentiality about the testing results, with disclosure only to those who need the information for official business duties or as required by law.

2. The Fourth Amendment's familiar guarantee is that no person may be subjected to unreasonable searches and seizures. The parties recognize, and the Court agrees, that the Supreme Court's construction of the

Amendment in the context of public workers involved in dangerous activities applies here. *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 624 (1989). The Center had a compelling interest in ensuring that Brotherton performed his safety-sensitive duties with a clear mind. *Ibid.* Weighed against that interest, the intrusion into Brotherton's legitimate expectation of privacy was minimal. *Rushton v. Nebraska Public Power District*, 844 F.2d 562, 566 (8th Cir. 1988) (Richard S. Arnold, J.).

Brotherton was detained about fifty-five minutes for the test. He was off duty forty-five of those minutes. In other words, the Center kept him at work almost an hour late. This delay caused him to miss a long-scheduled appointment to have his damaged piano appraised. When Brotherton asked to leave for that appointment, Donham treated him gruffly—he yelled, and refused to allow Brotherton to go anywhere. All this weighs in the reasonableness balance. *Skinner*, 489 U.S. at 619. While the Court doesn't condone Donham's incivility, it doesn't make this search unreasonable. Brotherton got his piano appraised a few weeks later.

A number of non-maintenance personnel also used the maintenance bathroom. That fact doesn't diminish the Center's interest in making sure that

none of the maintenance workers was using drugs on the job. And the connection between this bathroom and those workers was not so attenuated that it made their testing unreasonable in the circumstances. The Center didn't give Brotherton's test results to law enforcement. One of Brotherton's co-workers tested positive for methamphetamine; the Center didn't give his results to law enforcement either. *Compare Ferguson v. City of Charleston*, 532 U.S. 67 (2001). The Center didn't test Brotherton even though his job wasn't dangerous. *Compare Harmon v. Thornburgh*, 878 F.2d 484 (D.C. Cir. 1989). Bad blood didn't lead the Center to target Brotherton for drug testing. *Compare Ford v. Dowd*, 931 F. 2d 1286 (8th Cir. 1991). The brown stuff in the pie pan, as Brotherton points out, eventually tested negative for any controlled substance. That truth doesn't diminish the reasonableness of officer Donham's suspicions.

    The Court has considered the undisputed material facts and, where there is some dispute, viewed the record in Brotherton's favor. *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003). He suffered no Fourth Amendment violation. Defendants' motion for summary judgment, № 36, is granted.

So Ordered.

*[signature: D.P. Marshall Jr.]*
D.P. Marshall Jr.
United States District Judge

4 September 2014

**1087.0.0 EMPLOYEE DRUG AND ALCOHOL PREVENTION POLICY**

All Department of Human Services (DHS) employees are prohibited from using or possessing controlled substances or alcohol while on duty or working with the presence of alcohol or illegal drugs in the employee's body, or abusing legal drugs. Abusing legal drugs includes using drugs prescribed for another person. Legal drugs are defined as medications prescribed by a licensed physician or medical facility for an employee or another person. Employees who engage in drug or alcohol abuse face the risk of termination and the forfeiture of worker's compensation medical and indemnity benefits.

**1087.1.0 Policy will be Strictly Applied**

1087.1.1 This rule will be strictly applied according to its terms. No terms or conditions not appearing under this policy apply. For example, no Administrative Review is required to implement disciplinary action pursuant to this policy. This is a special promulgated policy, not part of DHS Policy #1085, Minimum Conduct Standards for DHS Employees.

1087.1.2 Nothing in this rule abrogates the employment at will doctrine. Any departmental error that is trivial or formal or merely academic and that does not prejudice the substantive rights of an affected party and that in no way affected the final outcome of the case will be deemed harmless error and will not be grounds for overturning the agency decision.

**1087.2.0 All Employees are Subject to the Provisions of this Policy when Engaged in the Following Activities:**

- When conducting DHS business, whether on or off DHS property.
- When on DHS property at any time, including parking lots, whether leased or owned by DHS.
- When driving or riding as a passenger in a DHS vehicle.
- When assigned to on-call status, required to remain available by telephone or pocket pager, in order to be called in to work.

**1087.3.0 Information is Confidential**

All data, information, and results related to employee drug and alcohol testing are confidential. Disclosure of information will only be to those individuals whose official business duties necessitate disclosure or as required by law.

**1087.4.0 The Following Three Levels of Drug Testing will be Used**

1087.4.1 Pre-Employment: All persons selected for new employment or a change of employment within DHS must submit to a drug test as a precondition of employment. All hiring decisions are contingent on the selectee passing the drug

Effective Date: September 6, 2002                                                                                                  Page 1 of 7

DHS 155

test. This applies to current DHS employees applying for different positions as well as external applicants.

1087.4.2 **Reasonable Cause**: All employees are subject to reasonable cause drug and alcohol screening.

1087.4.3 **Random**: Employees in safety sensitive positions or engaged in drug prevention activities are also subject to random drug testing as a condition of employment.

**1087.5.0 PRE-EMPLOYMENT DRUG TESTING PROCESS**

1087.5.1 Vacancy announcements for positions for which drug or alcohol testing is required will include notice of testing in the announcement. The Career Opportunities Bulletin and other job advertisements will include a statement advising applicants that they will be required to submit to drug and alcohol testing after a conditional offer of employment.

1087.5.2 All applicants selected for employment (includes applicants for temporary, emergency, and extra help positions), will also be notified in writing (DHS Form 1956, Pre-Employment Drug Testing Process Applicant Notice) at the time of application or interview that an offer of employment is conditional upon passing a pre-employment drug test. The written notification will inform applicants of the consequences of: (a) failing to appear for testing or (b) a test indicating positive for drugs or alcohol.

1087.5.3 Upon conditional selection of an individual for employment, the hiring official must notify the selectee (via telephone and letter) that the selectee is conditionally selected for employment contingent on he/she successfully passing a pre-employment drug test, and provide instructions for taking the test.

1087.5.4 DHS will select the drug testing site and pay for the initial drug test.

**1087.6.0 Drug Test Must be Performed Within 48 Hours**

1087.6.1 Within 48 hours of the initial notification the selectee must pick up a Chain of Custody form, take the form to the testing location, and provide a sample for testing.

1087.6.2 Keeping in mind that some testing locations are closed on weekends and holidays, the hiring official will not make the initial notification on the last workday before a weekend, holiday, or scheduled time off.

1087.6.3 If extenuating circumstances beyond the selectee's control prevent the selectee from providing a sample within 48 hours, the selectee must request an extension within 48 hours of the initial notification of selection. Scheduling or transportation problems experienced by the selectee are not extenuating circumstances. The decision of whether to grant the extension will be made by the hiring supervisor. The supervisor

must notify the selectee of the decision verbally within one working day, followed by written notification.

**1087.7.0    Two-Year Employment Ban**

The following will result in the selectee (whether internal or external applicant) being banned from applying for employment with DHS for two years:

- If the drug test is not performed within 48 hours (unless an extension is granted).
- If the drug test is positive. A test is considered to be positive if the test results indicate that the sample has been tampered with in any way or that the selectee has attempted to falsify the test results, including the use of masking agents or chemicals.
- If the selectee fails to appear for drug testing without notifying the hiring official that he/she is declining the position.

This ban applies to all drug tests, not pre-employment exclusively.

**1087.8.0    Drug Test Results**

1087.8.1    Drug test results are forwarded directly to the Policy and Administrative Program Management Unit (PAPM). PAPM then notifies the hiring supervisor whether the applicant is eligible or not eligible for hiring.

1087.8.2    If the results of the drug test are negative for controlled substances, the hiring supervisor will notify the selectee of his or her final selection and ask the selectee to complete the necessary documents for employment.

1087.8.3    If the results of the drug test are positive for controlled substances, the selectee will be notified in writing of the results and will not be considered further for the position. Internal applicants will be disciplined in accordance with this policy. External applicants will not be eligible for employment with DHS until all of the following conditions have been met:

  A. The selectee has successfully completed a supervised drug rehabilitation program that has been approved by DHS.

  B. A two-year waiting period has expired.

  C. The selectee passes a new employee drug screening.

  D. The selectee signs an agreement to allow random drug testing during his/her first year of employment. DHS will pay for the drug tests. If the selectee is hired for a safety sensitive or drug prevention position, the selectee must agree to random drug screening throughout his/her employment with DHS.

**1087.9.0    If Selectee Disagrees with Findings**

Effective Date: September 6, 2002                       Page 3 of 7

DHS 157

1087.9.1   If the selectee disagrees with the findings of the drug testing, the selectee may arrange to have a portion of the original sample retested at a laboratory certified by the National Institute of Drug Abuse. The selectee must arrange and pay for the second test. The second test must be performed within five working days after learning the results of the first test. If the second test is negative for the presence of drugs or alcohol, the hiring supervisor may either accept the second result or have a third test performed at the department's expense. The results of the third test will be considered conclusive.

1087.9.2   No applicant will be placed on the payroll before successful completion of the pre-employment drug screening, except as approved by the division director. Placement of any applicant on the payroll will be conditional contingent on the applicant successfully completing the pre-employment drug screening.

**1087.10.0 REASONABLE CAUSE DRUG TESTING PROCESS**

1087.10.1   DHS may require a blood test, urinalysis or other drug/alcohol screening for employees any time there is reasonable cause to suspect the employee has violated the Substance Abuse Free Workplace Rules. Reasonable cause to suspect a violation of the rules may be established by any of the following:

    A.   Observed impairment of job performance.

    B.   Uncharacteristic or erratic behavior.

    C.   The employee's attendance changes, e.g., habitual absenteeism.

    D.   Direct observation (by a manager, supervisor, or other DHS employee) of drug or alcohol use or possession during working hours or while on DHS premises.

    E.   A workplace accident or an accident involving a DHS vehicle when the accident results in personal injury.

    F.   Physical symptoms indicative of drug or alcohol use. For example, slurred speech, tremors, drowsiness, pupils dilated or constricted, irritability, hyperactivity, general motor impairment, disorientation, or the smell of alcohol on the breath.

    G.   Arrest or conviction for a drug or alcohol related offense or the identification of an employee as the subject of a criminal investigation into illegal drug possession, use, or trafficking.

    H.   Evidence the employee has tampered with a previous drug or alcohol test.

    I.   Evidence drugs have been tampered with or are missing from a unit or designated area to which the employee has access.

    J.   Any other facts or circumstances which would cause a reasonable person to believe that the employee is in possession of, or under the influence of drugs or alcohol.

1087.10.2  Upon establishing reasonable cause, the employee's supervisor will promptly detail in writing the circumstances that formed the basis of the determination that reasonable suspicion existed to warrant the testing. A written record will be made of the observation leading to a controlled substances reasonable suspicion test within twenty-four (24) hours of the observed behavior. Original documentation will be kept for at least one (1) year. A copy of the documentation will be given to the employee upon request. The employee must be ordered to report for drug and alcohol testing.

**1087.11.0  RANDOM DRUG TESTING PROCESS**

1087.11.1  Division and facility directors may identify those positions within their divisions or institutions that are "safety sensitive" or require integrity to a drug prevention job mission. Safety sensitive positions are those in which a drug or alcohol impairment constitutes an immediate and direct threat to public health or safety. The positions will be identified by position number.

1087.11.2  As a condition of employment in safety sensitive or drug prevention positions, employees agree to random drug testing. Employees in these positions will be randomly selected at intervals determined by DHS. The contractor will generate a list of names for the random drug testing. Once an employee is selected for testing, the employee must report for drug testing procedures.

1087.11.3  If changes in the job duties associated with a position make the position safety sensitive or require integrity to a drug prevention job mission, any employee holding the position must agree to random drug testing as a condition of continued employment.

**1087.12.0  Random/Reasonable Cause Testing Compliance**

1087.12.1  An employee selected under random or reasonable cause for drug or alcohol testing **must report to the designated testing site within four (4) hours of notification.** The employee is subject to random or reasonable cause testing only on scheduled workdays.

1087.12.2  An employee failing to submit to testing within four hours of notification will be terminated. If the employee tampers with the sample or in any way falsifies test results, including the use of masking agents or chemicals, the employee will be terminated and will not be eligible for rehire.

1087.12.3  If the employee is to be tested at a location other than the employee's work site, supervisors will be responsible for arranging transportation to the test site in cases of reasonable cause testing.

**1087.13.0  Failure to Provide Sample**

Normal drug screening uses a urinalysis test. If the employee or applicant is unable to provide a sample when he or she reports to the sampling site, the person to be tested may opt to provide a blood sample or a hair sample. If blood or hair is provided, the cost of testing will be at the employee or applicant's own expense. Failure to provide a urine, blood, or hair sample will have the same consequences as testing positive for drugs or alcohol.

**1087.14.0   If Employee Disagrees with Test Results**

If an employee disagrees with the findings of the drug or alcohol test, the employee may arrange to have a portion of the original sample retested at a laboratory certified by the National Institute of Drug Abuse. The employee will arrange and pay for the second test. The second test must be performed within five working days of learning the results of the first test. If the second test is negative for the presence of drugs or alcohol, the supervisor may either accept the second test result or have a third test performed at the department's expense. The result of the third test will be considered conclusive.

**1087.15.0   Disciplinary Actions for Violations**

The supervisor of an employee who tests positive for drugs or alcohol will be notified and the employee must abide by the following terms:

1087.15.1   <u>First Offense</u>

    A.    Ten days suspension without pay. Disciplinary points will not be assigned for drug or alcohol suspensions. Notice of Disciplinary Action (DHS-1173) is not required.

    B.    Sign and adhere to a DHS-1958 "Return to Work Agreement" to refrain from all illegal drug use. Failure to sign or fulfill the terms of this agreement is a second offense.

    C.    Enroll in the State of Arkansas Employee Assistance Program (EAP), request substance abuse services, and fully participate in all offered services. Contact the EAP before returning to work from the ten-day suspension. Failure to complete any of the above is a second offense.

    D.    Participating in mandatory EAP random interval drug screening for at least one year. Failure to take these drug tests at the times determined by EAP is a second offense. The employee will pay the cost of the drug tests.

    E.    Obtaining EAP Certification that the employee has successfully completed a substance abuse program designated by EAP. EAP notification of program non-compliance is a second offense.

1087.15.2 Second Offense

    A.  Second offense includes the failure to meet any condition imposed as a result of a first offense.

    B.  Any employee committing a second offense under this policy will be immediately terminated. A terminated employee forfeits eligibility for workman's compensation, and medical and indemnity benefits.

    C.  Terminated employees will be eligible for re-employment consideration only after all of the following conditions are met:

- The applicant has successfully completed a supervised drug rehabilitation program approved by DHS.
- A two-year waiting period has expired.
- The applicant passes a new employee drug screening.
- The applicant signs an agreement to allow random drug testing during the first year of employment at the department's expense.

**1087.16.0 Employee Assistance Program**

1087.16.1 EAP is an established program capable of providing problem assessment, short-term counseling, referrals to other providers, follow-up services, and education and training.

1087.16.2 If an employee in the course of employment voluntarily enters EAP or an approved treatment program requesting services related to substance abuse, DHS has the option of not requiring follow-up testing. If follow-up testing is required, it must be conducted at least once a year for a two-year period after completion of the program. Advance notice of a follow-up test will not be given to the employee to be tested.

1087.16.3 DHS will not discharge, discipline or discriminate against an employee solely upon the employee's voluntarily seeking treatment for a drug-related or alcohol-related problem, entering an employee assistance program for drug-related or alcohol-related problems or entering a drug or alcohol rehabilitation program, if the employee has not previously tested positive for drug or alcohol use.

**1087.17.0 Department Contact**

    Office of Finance and Administration
    Human Resources/Support Services Section
    Policy and Administrative Program Management
    P.O. Box 1437/Slot WG3
    Little Rock, AR 72203-1437
    Telephone: 682-5835

Replacement Notation: This policy replaces DHS Policy 1087 dated December 10, 1999.

Effective Date: September 6, 2002                                        Page 7 of 7